NOT DESIGNATED FOR PUBLICATION

No. 123,759

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARYL WEBB,
*Appellant*,

V.

MCPHERSON CONTRACTORS, INC.,
*Appellee*.


MEMORANDUM OPINION


Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed March 18, 2022. Affirmed.

*Marc N. Middleton*, of Cornerstone Law Firm, of Kansas City, Missouri, for appellant.

*Randall J. Forbes*, of Frieden & Forbes, LLP, of Topeka, for appellee.


Before POWELL, P.J., SCHROEDER, J., and JAMES L. BURGESS, S.J.


PER CURIAM: Daryl Webb timely appeals from the district court's decision granting summary judgment in favor of McPherson Contractors, Inc. (McPherson) on his claim of unlawful retaliatory discharge under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Upon our review of the record, we find at all relevant times Webb was acting in his managerial role as the human resources (HR) director and his advice to McPherson on how to handle issues with a former employee did not constitute notice of an FLSA claim by him. We affirm.

1

Webb was hired by McPherson in May 2017 as the company's HR director. In January 2018, Webb received an email from one of his supervisors, McPherson's chief financial officer, Jane Gunn, indicating the company intended to withhold the final paycheck of a former employee until he returned certain company property. Webb responded by emailing Gunn and another of his supervisors, McPherson's executive director of operations, Greg Stueve, stating, in relevant part: "You understand, of course, it is illegal to do that in Kansas." Stueve later instructed Webb to contact the sheriff's office to assist in retrieving McPherson's property from the employee. But Webb refused to comply with Stueve's request.

In the following weeks, discussions occurred between Gunn; Stueve; McPherson's chief operating officer, William Sims; and McPherson's president, Matt McPherson, as to whether Webb should be terminated. Stueve expressed concerns with Webb's refusal to contact the sheriff's office. Ultimately, Webb was terminated on February 16, 2018. McPherson asserted Webb was terminated because he did not fit the company's culture; had some instances of poor job performance; did not get along with his immediate supervisors, Stueve and Gunn; and exhibited a negative attitude.

In June 2018, Webb filed a petition asserting he was wrongfully terminated by McPherson. He alleged two state law claims: wrongful discharge on the basis he was fired for reporting a violation of the Kansas Wage Payment Act (KWPA), K.S.A. 44-313 et seq.; and wrongful discharge on the basis he was fired for reporting to his superiors that he had discovered two employees who were in possession and under the influence of marijuana. Webb was later granted leave to amend his petition to include a retaliatory discharge claim under the FLSA, which he did. The district court granted McPherson's motion for summary judgment on Webb's first two claims in separate orders, entered in

2

January 2020 and September 2020, respectively. Webb did not appeal from either summary judgment order on his state law claims.

The district court initially denied McPherson's motion for summary judgment on Webb's FLSA claim but reconsidered its ruling. In December 2020, the district court explained it ultimately was granting McPherson's motion for summary judgment because Webb was acting in his managerial capacity as McPherson's HR director when he opposed the company's actions in withholding the former employee's last paycheck. The district court concluded Webb could not have engaged in protected FLSA activity adversarial to the company because his actions were consistent with his duties as HR director to ensure the company complied with the FLSA. The district court also concluded Webb's actions generally did not show he engaged in the type of activity protected by the FLSA. Additional facts are set forth as necessary.

ANALYSIS

*Standards of Review and Applicable Legal Principles*

Because the district court granted McPherson's summary judgment motion, we will first address the rules we follow to review the district court's decision. The basis for the district court's reasoning was grounded in its interpretation and application of the FLSA.

*Summary Judgment*

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the

3

evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

"A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires it to determine the state of mind of one or both of the parties. [Citations omitted.]" *Hill v. State*, 310 Kan. 490, 520, 448 P.3d 457 (2019). "'Summary judgment should not be used to prevent the necessary examination of conflicting testimony and credibility in the crucible of a trial.' [Citations omitted.]" *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008). And "[a] district court judge may not decide disputed issues of material fact on summary judgment, even if the claims sound in equity rather than law." *Stechschulte v. Jennings*, 297 Kan. 2, Syl. ¶ 1, 298 P.3d 1083 (2013).

*Statutory Interpretation*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). However, "where there is a binding federal court decision interpreting a federal statute, we are obligated to follow that interpretation." *In re Marriage of Williams*, 307 Kan. 960, 968, 417 P.3d 1033 (2018).

*FLSA Claims*

Webb argues he engaged in a protected activity when he reported and opposed McPherson's FLSA violation. He claims he was not acting in a managerial role and had stepped outside his job responsibilities when he asserted McPherson had to pay the former employee his last paycheck on his regular paydate.

"Under the FLSA's anti-retaliation provision, an employer may not

"'discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]' 29 U.S.C. § 215(a)(3).

"See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011).

"To establish a prima facie claim of retaliation, [a plaintiff is] required to provide 'evidence from which a jury could conclude that (1) [he] engaged in a protected activity, (2) [he] suffered an adverse employment action, and (3) a causal connection exists between [his] protected activity and the adverse employment action.' *Fezard v. United Cerebral Palsy of Cent. Arkansas*, 809 F.3d 1006, 1011 (8th Cir. 2016). The 'protected activity' may be 'fil[ing] any complaint. . . .' See *Kasten*, 563 U.S. at 7. This may be accomplished by oral statements. 563 U.S. at 14." *Lumry v. State*, 305 Kan. 545, 555-56, 385 P.3d 479 (2016).

*Webb asserted no FLSA claims.*

Setting aside the question of whether Webb was acting in a managerial role, the biggest flaw in his argument is his conduct did not show he was asserting a violation of the FLSA when expressing his concerns to his superiors. Specifically, Webb learned

5

Stueve and Gunn intended to withhold the employee's final paycheck until he returned company property. Webb emailed McPherson's payroll manager, Tona Osborn, asking: "Have we paid [the employee] everything we owe him?" Webb later inquired whether the employee had been or would be refunded for payroll deductions for insurance. Gunn responded by email, claiming the employee would be paid accordingly "[o]nce we determine the insurance rates and if all of his IT and PPE equipment have been returned." In response, Webb emailed Gunn, stating: "You understand, of course, it is illegal to do that *in Kansas*. We know what was deducted for insurance, so determining insurance rates is a moot point." (Emphasis added.)

The United States Supreme Court has interpreted the anti-retaliation protections of the FLSA to apply only when the nature of the complaint gives the employer "fair notice" the employee is asserting a violation of the FLSA. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011). The United States Supreme Court's interpretation of federal statutes is necessarily controlling on this issue. See *In re Marriage of Williams*, 307 Kan. at 968. Based on the fair notice standard required under *Kasten*, we find Webb's vague assertion of a violation of Kansas law is insufficient to properly articulate an alleged violation of the FLSA. Even if there was conflicting evidence as to whether Webb was acting within the scope of his managerial role, his claim still fails.

It is undisputed Webb never instituted or caused to be instituted an FLSA proceeding; he had not testified and was not about to testify in an FLSA proceeding; and he had not served and was not about to serve on an industry committee. The sole protected activity Webb identifies in his FLSA anti-retaliation claim was that expressing his concerns to his superiors amounted to filing a complaint in which he asserted the FLSA rights of a former employee to a timely final paycheck.

6

The *Kasten* Court concluded the anti-retaliation provision of the FLSA "suggest[s] that a 'filing' is a serious occasion, rather than a triviality." 563 U.S. at 14. The Court further explained:  "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." 563 U.S. at 14. While filing a complaint does not require a particular form, and such complaint may be made orally, the clear instruction of *Kasten* requires the complaint provide fair notice by clearly and sufficiently articulating an assertion of rights under the FLSA. See 563 U.S. at 14.

This is not to say the employee must speak with particular legal precision or exacting eloquence; rather, it must be readily understandable the complaint relates to a right protected under the FLSA. Simply put, the complaint must be clear enough to reasonably say what is meant and specific enough to reasonably mean what is said. See *McMillin v. Foodbrands Supply Chain Services, Inc.*, 272 F. Supp. 2d 1211, 1219 (D. Kan. 2003) ("'Employees often do not speak with the clarity or precision of lawyers. . . . But the thrust of inartful, subtle, or circumspect remarks nevertheless may be perfectly clear to the employer.'"); *Lumry*, 305 Kan. at 559-60 (In light of the surrounding circumstances and overall substance of his concerns, "[a] reasonable employer would have understood Lumry's flat refusal to work more than five hours of overtime per week as an assertion of a protected FLSA right."). Here, Webb's statements to Gunn and Stueve fall short in both respects.

Webb's statements and conduct do not fairly reflect a clear and sufficient articulation of his now-asserted belief McPherson's intended course of action violated the former employee's rights under the FLSA. Again, Webb asserted withholding the employee's final paycheck would be "illegal . . . in Kansas." This assertion is ambiguous. A violation of the FLSA would necessarily be illegal in Kansas, as a violation of a generally applicable federal law is a violation of law in any state. See *Testa v. Katt*, 330

7

U.S. 386, 393, 67 S. Ct. 810, 91 L. Ed. 967 (1947) (A state could not refuse to enforce a right created by Congress as contrary to the state's public policy because "the policy of the federal Act is the prevailing policy in every state."). But the fact a federal law may have been violated in Kansas does not mean the action was illegal under Kansas law. See *Miami County Bd. of Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011) ("[T]he Supremacy Clause invalidates state laws that interfere with, or are contrary to, federal law."); *Elkins v. Showcase, Inc.*, 237 Kan. 720, 728, 704 P.2d 977 (1985) (Kansas statutes concerning wage payments "are enforceable so long as they are not in conflict with or contrary to provisions of the federal FLSA.").

For this reason, Webb's claim that withholding the former employee's paycheck was illegal in Kansas does not clearly and sufficiently articulate an assertion of his rights under the FLSA. Rather, a reasonable employer could, and likely would, construe Webb's concern as an indication the contemplated course of action violated the KWPA. And this was, in fact, the public policy Webb claimed McPherson violated in his now-abandoned state law retaliatory discharge claim, which the district court dismissed on summary judgment at an earlier stage of the proceedings.

Webb's complaint was further muddied by inquiring whether the employee was being refunded for insurance deductions. There could be any number of reasons under multiple federal or state law provisions why it would be illegal for an employer to withhold payroll deductions for a benefit ultimately not conferred upon the employee. In both its "content and context," a reasonable employer would not find Webb's statements as the HR director to be a "sufficiently clear and detailed . . . assertion of rights protected by the [FLSA] and a call for their protection." *Kasten*, 563 U.S. at 14.

Webb attempts to extrapolate his stated concerns by explaining, based upon McPherson's payroll policies, failure to pay the former employee on the scheduled pay date would result in the employee not being paid minimum wage, which is a right

8

guaranteed under the FLSA. However, this claim was not timely raised by Webb with McPherson. Webb's current arguments and explanations were only articulated in the course of the present litigation, wherein Webb asserted multiple claims for retaliatory discharge, i.e., this was only brought forth after Webb's employment was terminated. Webb never expressed any concerns to Stueve or Gunn fairly indicating their actions violated minimum wage requirements prior to his termination. Logically, Webb cannot give his employer fair notice he is asserting an FLSA right and, therefore, entitled to FLSA protections after he was terminated.

To the extent Webb points to any additional conduct or context at the time he voiced his concerns, the only other indication he believed McPherson's conduct was improper was based on his refusal to contact the sheriff's office to seek assistance in recovering the company's property. He asserts this amounted to a refusal to participate in the violation. But this action, or inaction, does not fairly articulate an assertion McPherson's intended course of conduct was in violation of the FLSA. It is ambiguous; there could be any number of reasons Webb did not want to involve law enforcement. His subjective reasons for acting as he did were only clearly articulated after his employment was terminated. Again, this does nothing to reasonably provide McPherson timely notice Webb was asserting a violation of the fired employee's rights and, thus, entitle Webb to protection under the FLSA. He had already been fired; those protections had already been waived.

Moreover, Webb's conduct is generally at odds with his stated concern(s). McPherson wanted to withhold the employee's final paycheck until the company's property was returned. Stueve told Webb to contact the sheriff's office to assist in getting the property returned. By refusing to do so, Webb failed to take action which would have abated McPherson's stated reasons for withholding the employee's paycheck. At best, Webb's refusal to contact the sheriff's office merely compounded an existing problem that he alone perceived subjectively. Nothing about contacting the sheriff's office could have

9

furthered illegal conduct. It was undisputed the employee had company property, which McPherson was legally entitled to recover. Contacting law enforcement to help recover one's lawful property is an inherently logical course of legal conduct. And, as McPherson accurately points out: "An ex-employee's refusal to return his employer's property is not a right 'afforded by the FLSA.'"

Webb failed to establish his statements and actions as the HR director were sufficient to articulate an entitlement to protection under the FLSA. His comments to Stueve and Gunn were insufficient to give notice of a complaint alleging an FLSA violation—an essential element of Webb's claim. See *Lumry*, 305 Kan. at 556. Because Webb's action or lack of action did not provide McPherson an objectively reasonable, readily understandable indication he believed the fired employee's FLSA rights had been or were being violated, his claim fails. See *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998) (summary judgment appropriate where plaintiff lacks evidence to prove essential element of claim).

> *The district court correctly determined Webb did not step outside his managerial role in raising his concerns.*

Webb further argues the district court erred in finding his actions were not protected under the FLSA because he was acting in a managerial role; therefore, his actions were not adverse to the company. "In order [for a managerial employee] to engage in protected activity under [the FLSA], the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996).

10

Here, the district court identified this factor as the most important consideration in its decision to grant McPherson's motion for summary judgment. Webb now claims the evidence did not incontrovertibly establish FLSA compliance was within the scope of his job duties. However, the comments Webb made to McPherson were based on the fact he was the HR director. Webb cannot now move from his management position as the HR director to justify his current FLSA claims. He gave advice as the HR director and not someone adverse to McPherson.

We observe a reasonable fact-finder could easily find the uncontroverted evidence reflected Webb was acting in his managerial capacity as HR director when he expressed his concerns to Gunn and Stueve. Among other things, Webb's job duties included: crafting and implementing HR policies, procedures, and practices; representing the company in employee termination claims; and maintaining knowledge of relevant employment legislation to ensure company compliance with the same. Clearly, Webb's assertion it was illegal in Kansas to withhold an employee's paycheck *could* be viewed as within the scope of his duties as HR director. This is because matters *generally* relating to an employee's termination were explicitly within the scope of Webb's job duties. Webb's statement to Gunn implicitly asserted that the legality, or illegality, of the proposed course of action was a matter for which he had knowledge of the relevant law(s). Maintaining knowledge of those laws to ensure the company's policies, practices, and procedures were in compliance with such laws was part of Webb's job duties. And paying employees for the work they have performed is a requirement of the FLSA. See 29 U.S.C. § 206(a)(1).

The district court concluded Webb did not step outside his managerial role as HR director because his email to Gunn, indicating it was illegal to withhold the employee's final paycheck, did not assert an FLSA violation and "did not contain an indication that [Webb] was stepping outside of his role as HR Director for [McPherson]." We agree.

Webb voiced his concerns with the company's actions in potentially withholding the employee's paycheck, but the record reflects the paycheck was sent to the employee's jobsite for him to pick up and eventually mailed to him. There was some conflicting evidence as to whether Webb's role in handling employee termination issues as HR director involved—directly or incidentally—any matters specifically protected by the FLSA—pertinently, here, ensuring a terminated employee had been paid all he or she was entitled to. But Webb's initial actions appear very much in line with his duties as HR director regarding employee termination. He asked the person responsible for payroll whether a terminated employee had been or would be paid what he was owed—implicitly ensuring the company's compliance with applicable labor laws through established policies and procedures; nothing more, nothing less. And a reasonable fact-finder could conclude Webb was acting in the company's interests by later suggesting to his superiors they could not engage in a course of conduct he believed was illegal.

To the extent there was any ambiguity in the reasons for Webb's conduct, he resolved the question conclusively in his deposition testimony, stating: "[M]y interpretation was that the greatest, clearest, most present danger to the company was that they were not going to pay him on a regular, usual pay period." Here, Webb's actions were entirely within his managerial role as HR director, and Webb has not shown he engaged in protected conduct under the FLSA. McPherson was entitled to summary judgment based on a lack of adversarial action by Webb. See *McKenzie*, 94 F.3d at 1486-87.

Because Webb did not show he timely made McPherson aware of an FLSA claim and Webb did not engage in a protected activity, there can be no adverse employment action under the FLSA. Therefore, we find no reason to consider his argument that he was fired as a pretext for a retaliatory discharge in violation of the FLSA. The district court did not address the issue in its ruling, and we decline to do so as well.

Webb has not identified any error requiring reversal of the district court's summary judgment grant to McPherson. Accordingly, we affirm the district court's grant of summary judgment.

Affirmed.