Walter David MORGAN,
Plaintiff–Appellant,

v.

F.T. MacDONALD; White Pine County
School Board; R. Angelone; George
Deeds; S. Godinez; C. Wolff; W. Reid,
Defendants–Appellees.

No. 92–16643.

United States Court of Appeals,
Ninth Circuit.

Argued and Submission Deferred
Sept. 12, 1994.

Submitted September 16, 1994.

Decided Dec. 2, 1994.

Lisa Duncanson, Certified Law Student,
Professor Samuel Frizell, Western State
University College of Law, Fullerton, California; Walter David Morgan, pro se, Ely,
NV, for plaintiff-appellant.

Thomas J. Ray, Louis Ling, Paul G. Yohey, Deputy Attys. Gen., Carson City, NV,
Janice J. Brown, Las Vegas, NV, for defendants-appellees.

Before: FEINBERG,* SCHROEDER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

We decide whether a Nevada state prison inmate is an "employee" under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

## I

Walter Morgan is an inmate at Ely State Prison in Nevada. From October 1989 to September 1990, he worked at the Ely State Prison Education Center. Like all other inmates, Morgan was required under Nevada law to work or receive vocational training for 40 hours each week.[1] Morgan chose to fulfill this requirement by working at the Education Center as a computer "trouble-shooter."

The Education Center is located on the grounds of Ely State Prison, and provides general education and training for the prison's inmates. The prison contracted with the White Pine County School Board to operate the Education Center; the two entities then agreed to let inmates perform various jobs there. The inmates are paid a nominal salary each week, at a rate below the minimum wage established by the FLSA.

On October 22, 1991, Morgan filed a complaint alleging, among other things, violation of the FLSA's minimum wage requirement. See 29 U.S.C. § 216(b) (conferring private right of action on employees for violations of the FLSA).[2] After the defendants filed motions pursuant to Fed.R.Civ.P. 12(b)(6), the district court dismissed Morgan's complaint.

## II

A. To determine whether Morgan was an "employee" under the FLSA, we must begin with our recent decision in *Hale v. Arizona*, 993 F.2d 1387 (9th Cir.1993) (en banc). Though we declined to hold there that prisoners are "categorically excluded from the FLSA," *id.* at 1389, we significantly narrowed the class of inmates even potentially covered by federal minimum wage standards. We held that inmates cannot be deemed employees under the FLSA when they work for prison-run industries and are statutorily required to work as a term of their confinement.[3] Under these circumstances, we concluded, "the economic reality is that [the prisoners'] labor belong[s] to the institution." *Id.* at 1395. Moreover, we noted that the primary policy concern of the FLSA—ensuring a minimum standard of living for all workers—is simply inapplicable to prisoners "for whom clothing, shelter, and food are provided by the prison." *Id.* at 1396.[4]

■ In dismissing the inmates' claims, we adhered to the "economic reality" standard long used to determine whether an employer-employee relationship exists under the FLSA. *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961). But we declined to apply the four-factor test from *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983), which had previously been used to flesh out the con-

---

* The Honorable Wilfred Feinberg, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

1. Nev.Rev.Stat. § 209.461(1)(b) provides: "The director [of the Nevada Department of Prisons] shall ... [t]o the extent practicable, require each offender, except those whose behavior is found by the director to preclude participation, to spend 40 hours each week in vocational training or employment, unless excused for a medical reason."

2. Morgan named as defendants the Nevada Labor Commissioner, the White Pine County School Board, the Director of the Nevada Department of Prisons, and various Ely State Prison officials.

3. The applicable statute in *Hale* provided: "The director has the authority to require that each able-bodied prisoner under commitment to the state department of corrections engage in hard labor for not less than forty hours per week, except that not more than twenty hours per week of participation in an educational, training or treatment program may be substituted for an equivalent number of hours of hard labor...." Ariz.Rev.Stat. § 31–251(A).

4. Every other circuit to address this issue has reached the same conclusion. *See, e.g., Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993); *Vanskike v. Peters*, 974 F.2d 806, 809–10 (7th Cir.1992); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir.1992).

tours of the economic reality doctrine. The *Bonnette* factors are properly applied when an individual is clearly employed by one of several entities and the only question is which one. They are of no help, however, in deciding the more fundamental question present here:. whether the inmates are "employed" in the relevant sense at all. *Hale,* 993 F.2d at 1394. Left without a concrete test to apply when analyzing inmate FLSA claims, we rely on the broad principles enunciated in *Hale.*

     ■   **B.**   After examining the economic reality of Morgan's relationship with Ely State Prison, we conclude that he cannot be considered an employee under the FLSA. Like the inmates in *Hale,* Morgan worked for a program established by the prison and operated under the direction of prison officials.[5] In addition, Morgan worked pursuant to a statutory requirement materially similar to the one we considered in *Hale:* Under Nev. Rev.Stat. § 209.461, all inmates are required to work or receive training for 40 hours each week. *Compare* nn. 1 & 3 *supra.* Thus, Morgan was in no sense free to bargain with would-be employers for the sale of his labor; his work at the prison was merely an incident of his incarceration. *See Vanskike,* 974 F.2d at 809 (prisoner's employment with prison didn't "stem from any remunerative relationship or bargained-for exchange of labor for consideration, but from incarceration itself"). Morgan and the prison didn't contract with one another for mutual economic gain, as would be the case in a true employment relationship; their affiliation was "penological, not pecuniary." *Hale,* 993 F.2d at 1395. Because the economic reality of Morgan's work at the prison clearly indicates that his labor "belonged to the institution," *id.,* he cannot be deemed an employee under the FLSA.

    Morgan attempts to distinguish *Hale* on two grounds. First, he contends that unlike the "hard labor" performed by the prisoners in *Hale,* his work as a computer "troubleshooter" called for the exercise of a high degree of skill and training. In his view, prisoners who engage in low-skill, menial tasks are different for FLSA purposes than inmates who bestow the fruits of a specialized education or training on the prison. Not so. Our holding in *Hale* did not turn on the fact that the prisoners there were engaged in hard labor or purely menial tasks. In fact, we noted that one of the plaintiffs worked as a bookkeeper and office manager, *id.* at 1390—hardly the sort of work normally thought of as hard labor. Determinative in *Hale* was the fact that the inmates' work in prison-run programs stemmed. primarily from their status as incarcerated criminals. *See id.* at 1395. This is no less true of the labor Morgan performed.

    ■   Alternatively, Morgan attempts to distinguish *Hale* by suggesting that the inmates' compelled labor there was a form of punishment, while the labor he performed was purely for educational and rehabilitative purposes. We did not base our holding in *Hale* on the view that the prisoners' work constituted punishment. The plaintiff in *Hale* who worked as a bookkeeper and office manager did so as part of a program that allowed inmates to run their own businesses while incarcerated. Work of this nature clearly doesn't promote the punitive objectives of the criminal justice system. Rather, as we acknowledged in *Hale,* prison programs of this sort serve primarily rehabilitative goals: They "occupy idle prisoners, reduce disciplinary problems, nurture a sense of responsibility, and provide valuable skills and job training." *Id.* at 1398. Thus, nothing in *Hale* suggests that a prisoner's status under the FLSA turns on the precise penological purpose for which his work is performed. So long as the economic reality of the employment relationship suggests that the prisoner's labor essentially belongs to the prison, the FLSA is inapplicable.

### III

    ■   Morgan claims he was subjected to cruel and unusual punishment when the director of the Education Center· stated that

---

  **5.** That the prison contracted with another public agency to oversee day-to-day operations of the Education Center does not change the reality that this was a "prison structured" program, as was the program in *Hale.*

Morgan's co-workers would have to be fired if his FLSA claim proved successful. Morgan argues that the director should have realized this statement was likely to cause other inmates to retaliate against him. Morgan's complaint contains no allegations that he was ever subjected to retaliation at the hands of his fellow inmates, nor does it provide any basis for inferring Reid was aware that his actions exposed Morgan to a substantial risk of serious harm. Morgan thus failed to state a claim for damages under the Eighth Amendment. *See Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

\* \* \* \* \* \*

We have addressed each of Morgan's remaining contentions in a separate unpublished disposition filed on this date. The district court properly dismissed Morgan's complaint in its entirety.

**AFFIRMED.**