83 F.3d 311
 131 Lab.Cas. P 33,384, 3 Wage & Hour Cas.2d
(BNA) 498,
96 Cal. Daily Op. Serv. 3257,
96 Daily Journal D.A.R. 5341
 Gaylin BURLESON, Plaintiff,
and
Jerry Lee Syrovatka, Sr., Plaintiff-Appellant,
v.
STATE OF CALIFORNIA; Prison Industry Authority,
Defendants-Appellees.
Gary JERNIGAN, Plaintiff,
and
Jerry Lee Syrovatka, Sr., Plaintiff-Appellant,
v.
STATE OF CALIFORNIA; James H. Gomez; Wayne Estelle,
General Manager, Prison Industry Authority; Jan Winter,
Asst. General Manager of Operations, Prison Industry Board;
Ray Brown, Production Manager II, Prison Industry Authority;
Prison Industry Authority; Joella Fazio; David King;
William Allen; John Babich; Robert Burton; Leonard
Greenstone; William Saracino; Thomas Wornham, Defendants-Appellees.
 Nos. 95-16188, 95-16192 and 95-16550.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided May 8, 1996.
 
 Jason Rabinowitz, Mark A. Garver, Certified Law Students; Susan D. Christian, Supervising Attorney, University of California Davis School of Law, Davis, California, for plaintiff-appellant.
 Larry G. Raskin, Deputy Attorney General, Sacramento, California, for defendants-appellees.
 Appeals from the United States District Court for the Eastern District of California Garland E. Burrell, Jr., District Judge, Presiding. Nos. CV-93-200-GEB, CV-92-1408-GEB.
 Before: THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 Plaintiffs in these consolidated cases* appeal from the order of the district court granting summary judgment to defendants. Plaintiffs are current and former inmates in the California state prison system who claim that they are or were "employees" within the meaning of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and are thus entitled to receive the federal minimum wage for work performed for the State of California's Prison Industry Authority ("PIA"). Defendants are the State of California, the PIA, and certain PIA personnel in their official capacities. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291, and we affirm.
 
 BACKGROUND
 
 2
 In the California state prison system, able-bodied prisoners are required to perform "as many hours of faithful labor in each day and every day during his or her term of imprisonment as shall be prescribed by the rules and regulations of the Director of Corrections." Cal.Penal Code § 2700. The implementing regulation provides that a prisoner's work obligation "may be a full day of work, education, or other program activity, or a combination [thereof]." Cal.Code Regs. tit. 15, § 3040(a).
 
 
 3
 Plaintiffs worked for enterprises operated by the PIA, producing various goods and services that the PIA sold to other entities, public and private, for a profit. The PIA paid plaintiffs between $.30 and $.95 an hour for their work, far below the federal minimum wage of $4.25 an hour to which plaintiffs claim they are entitled.[1]
 
 
 4
 The California Legislature created the PIA in 1982 to replace the old prison industries program administered directly by the Director (the "Director") of the California Department of Corrections ("CDC"). The legislature found that the old prison industries program had failed to provide inmates with meaningful jobs, offset the cost of operating the prison system, and reduce inmate idleness. See 1982 Cal. Stat., c. 1549, §§ 2-3, at 6034. It intended the PIA to achieve these goals. Id.
 
 DISCUSSION
 
 5
 * We recently determined the applicability of the FLSA's minimum wage provisions to prisoners in Arizona's prison work program. Hale v. Arizona, 993 F.2d 1387 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993). In denying the plaintiffs' claims, we held:
 
 
 6
 While we do not believe that prisoners are categorically excluded from the FLSA, we hold that the inmates in this case, who worked for programs structured by the prison pursuant to the state's requirement that prisoners work at hard labor, are not "employees" of the state within the meaning of the FLSA.
 
 
 7
 Id. at 1389. In so holding, we adapted the "economic reality" test to the circumstances of inmate workers, noting that the "economic reality of the relationship between the worker and the entity for which the work was performed lies in the relationship between prison and prisoner. It is penological, not pecuniary." Id. at 1395 (emphasis added). Hale concluded "the economic reality is that their [plaintiffs'] labor belonged to the institution," and held that "they were not 'employees' of the prison entitled to be paid a minimum wage under the FLSA." Id.
 
 
 8
 We followed Hale in Morgan v. MacDonald, 41 F.3d 1291 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). There, we denied FLSA coverage to prisoners in Nevada's prison work program. Id. at 1293.
 
 
 9
 The case at bench falls squarely within Hale and Morgan. The workers of California's PIA work in a prison-structured program pursuant to a state hard labor statute,[2] and are therefore not "employees" under FLSA.
 
 II
 
 10
 California's work requirement statute, Cal.Penal Code § 2700, is not significantly different from the Arizona and Nevada statutes which gave the prison industries programs in Hale and Morgan their "penological" purpose.[3] California's inmates are under legal compulsion to work or to participate in other prison-run programs, as assigned.[4]
 
 
 11
 Plaintiffs stress that no apparent statutory or regulatory authority exists for the CDC to assign them to work for the PIA without their consent. Indeed, prison authorities make work assignments only after consideration of, inter alia, the inmate's "express needs and desires." Cal.Code Regs. tit. 15, § 3040(c). However, "in lieu of an inmate's assignment to a mutually agreed upon program" the CDC can compel inmates to perform "any work deemed necessary to operate and maintain the institution and its services in a clean, safe, and efficient manner." Cal.Code Regs. tit. 15, § 3040(d).[5]
 
 
 12
 The voluntary nature of assignment to the PIA does not create an oasis of contractually "bargained-for exchange" in the midst of a desert of compelled labor in the California state prison system. As the district court pointed out, plaintiffs "mistakenly equate the ability to choose between various work programs offered by the CDC, with the freedom to 'sell' their labor to the PIA."
 
 
 13
 The consensual nature of a particular work assignment in a hard-labor state does not remove the penological purpose from the work relationship. As we stated in Hale:
 
 
 14
 Inmates submit that it is significant that they had to apply for the work they did and were screened for security and other purposes. The fact that prison authorities may have structured certain programs more selectively than others does not, however, make them less of a prison-structured program pursuant to the State of Arizona's requirement that prisoners work at hard labor.[6]
 
 
 15
 Hale, 993 F.2d at 1394 n. 10; see also Morgan, 41 F.3d at 1292 (inmate "chose" to fulfill Nevada's hard-labor requirement by working at education center run by local county school board). We therefore hold that the existence of a choice between prison programs in a state with a work-requirement statute does not render the inmate's work nonpenological.
 
 III
 
 16
 Plaintiffs also argue that the PIA's distinctive organizational structure renders work for PIA not work in a "prison-structured program."
 
 
 17
 The PIA is administered separately from the rest of the CDC by its own Prison Industry Board. See Cal.Penal Code § 2802-08.[7] The monies of the PIA are maintained in a "revolving fund" administered with the outside involvement of only the State Treasurer and the State Controller. See § 2806.
 
 
 18
 Nevertheless, the PIA is by statute a part of the CDC. Cal.Penal Code § 5001. The PIA's status as a part of the California correctional system clearly brings it within the ambit of "prison-structured programs." That it may be separately administered within the CDC does not alter the PIA's fundamentally penological character as a "prison-structured program."
 
 IV
 
 19
 Citing no authority, plaintiffs argue that the PIA's focus on generating a profit from its industries renders the inmates' relationship with PIA "pecuniary" rather than "penological."
 
 
 20
 Defendants do not contest that PIA seeks to raise net revenue from "profit-making enterprises" and otherwise "replicat[es] as closely as possible free world production and service operations...." See 1982 Cal. Stat., c. 1549, § 3(a)-(b), at 6034. However, this is not inconsistent with ascribing a "penological" purpose to the work relationship. As the Seventh Circuit has noted:
 
 
 21
 For the government ... profits are not the ultimate goal. A governmental advantage from the use of prisoner labor is not the same as a similar low-wage advantage on the part of a private entity: while the latter amounts to an unfair windfall, the former may be seen as simply paying the costs of public goods-including the costs of incarceration....
 
 
 22
 Vanskike v. Peters, 974 F.2d 806, 811-12 (7th Cir.1992), cert. denied, 507 U.S. 928, 113 S.Ct. 1303, 122 L.Ed.2d 692 (1993). The fact that California, through the PIA, attempts to generate a profit from plaintiffs' labor does not affect the economic reality that their labor "belongs" to the state. Nor does it change the penological purpose of PIA's enterprise. See also 1982 Cal. Stat., c. 1549, § 3, at 6034.[8]
 
 V
 
 23
 Finally, by reference to certain worker benefits and protections under state law, plaintiffs attempt to shore up their argument that the "economic reality" of their relationship to the PIA is one of an "employee."
 
 
 24
 California law considers PIA workers to be "employees" for purposes of workers' compensation coverage and protection under the California Occupational Safety and Health Act of 1973. See Cal. Lab.Code §§ 3351(e), 6304.2. PIA workers are paid for official break time, job-related training, and state holidays. A PIA affirmative action program fosters equal employment opportunity and a discrimination-free workplace.
 
 
 25
 The argument that these benefits and protections evince an employer/employee relationship has an intuitive appeal. However, these provisions cover not only PIA workers, but all workers in California state prisons. The argument proves too much. Benefits and protections under state law for inmate workers in general do not affect the economic reality analysis under the FLSA.
 
 CONCLUSION
 
 26
 California's prison work scheme cannot be distinguished from Hale.[9] The "economic reality" of plaintiffs' relationship to the PIA is penological. Plaintiffs are not "employees" under the FLSA. Therefore, their claims for damages and injunctive relief under the FLSA must fail.
 
 
 27
 AFFIRMED.
 
 
 
 *
 There are 79 cases consolidated on this appeal. The remaining 76 cases are disposed of by an unpublished Memorandum
 
 
 [1]
 Legislation now pending in Congress, if enacted, would probably moot this case. That bill would amend the FLSA by, inter alia, exempting "any employee who is an inmate of a penal or correctional institution and who participates in a correctional work program which is sanctioned by a State or Federal corrections agency or which is administered by a nonprofit organization authorized by State law to conduct a correctional work program on behalf of the State," effective as of June 25, 1938. H.R. 868, 104th Cong., 1st Sess. §§ 1, 2 (1995)
 
 
 [2]
 Definitionally, a "hard labor" statute does not necessarily require only physically difficult or purely menial assignments. As we stated in Morgan, "[o]ur holding in Hale did not turn on the fact that the prisoners there were engaged in hard labor or purely menial tasks. In fact we noted that one of the plaintiffs worked as a bookkeeper and office manager." 41 F.3d at 1293. The plaintiff in Morgan worked as a computer "troubleshooter." Id
 
 
 [3]
 Arizona law gives the state "the authority to require that each able-bodied prisoner ... engage in hard labor for not less than forty hours per week...." Ariz.Rev.Stat. § 31-251(A). Similarly, Nev.Rev.Stat. § 209.461(1)(b) provides: "The director [of the Nevada Department of Prisons] shall ... [t]o the extent practicable, require each offender ... to spend 40 hours each week in vocational training or employment...."
 
 
 [4]
 An inmate's refusal or failure to perform work or to participate in programs, as ordered or assigned, is considered to be a "serious rule violation." Cal.Code Regs. tit. 15, § 3315(a)(3)(J). Refusal of work assignments results in the inmate not being allowed to earn credit reduction off his or her sentence of incarceration and in having his or her privileges curtailed. See Cal.Code Regs. tit. 15, §§ 3043.4, 3044(f)
 
 
 [5]
 These work assignments do not include PIA jobs
 
 
 [6]
 One of the prison work programs in Hale allowed for the establishment of an Inmate-Operated Business Enterprise ("IOBE"). The IOBE program permits an inmate to organize and operate a business enterprise under the supervision of the prison industries program. 993 F.2d at 1390
 
 
 [7]
 The Prison Industry Board consists of eleven members, including the Director, who serves as Chairperson. Cal.Penal Code §§ 2802, 2803. The remaining ten members either are directors of designated state agencies or are appointed by the Governor and the Legislature. § 2802. Day-to-day operations are directed by the PIA's general manager, an appointee of the Board. § 2808(e)
 
 
 [8]
 That statute provides:
 It is the intent of the Legislature that:
 ...
 (b) The prison industries program reduces the burdensome cost of the correctional system on the citizens of this state through the establishment of self-sustaining or profit-making enterprises....
 (c) The prison industries program promote the security goals of the Department of Corrections by reducing idleness and providing an incentive for work in prisons, thereby contributing to an atmosphere in which tensions and violence will be reduced.
 (d) The prison industries program serve the goal of reintegrating ex-offenders into the outside working population by replicating as closely as possible free world production and service operations, in conjunction with relevant education, training, and post-release job placement.
 1982 Cal. Stat., c. 1549, § 3, at 6034 (emphasis added).
 
 
 [9]
 Plaintiffs also seek reconsideration of our decision in Hale. However, such reconsideration may be had only by en banc review or after an intervening Supreme Court decision. E.g., Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1285 (9th Cir.1992). This is especially true here, since Hale itself was an en banc decision