Ray MARSHALL, etc., Plaintiff,

v.

The KRYSTAL COMPANY, Defendant.

No. CIV-1-77-77.

United States District Court,
E. D. Tennessee, S. D.

Dec. 22, 1978.

---

**10**

Frank Steiner and Marvin Tincher, Nashville, Tenn., for plaintiff.

J. Guy Beatty, Miller & Martin, Chattanooga, Tenn., Daniel M. Shea, Smith, Currie & Hancock, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action by the plaintiff-Secretary of Labor to enjoin the defendant The Krystal Company (Krystal) permanently from violating the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., by withholding from the employees of its dinner-type restaurants operated under the name, The Loft, minimum wages properly due them, and for the recovery of liquidated damages. Trial was to the Court on November 30-December 1, 1977. The Court makes the following

### FINDINGS OF FACT:

1. Krystal does business within the jurisdiction of this Court.

2. Its business activities constitute an enterprise engaged in commerce as that term is defined in the Fair Labor Standards Act, *supra,* esp. 29 U.S.C. §§ 203(r), (s)(1).

3. Prior to July 23, 1974, Krystal engaged principally in the business of operating fast-food restaurants. On the immediately aforementioned date, Krystal commenced operation in Chattanooga, Tennessee of The Loft restaurant. It commenced operation on February 4, 1975 in Memphis, Tennessee of The Loft restaurant, and it commenced operation on June 20, 1977 of The Loft restaurant in St. Louis, Missouri. Krystal operated, and operates, each of these three dinner-type restaurants through its Loft Steakhouse Division.[1]

4. (a) Krystal, with the assistance of counsel, established before July 23, 1974 policies for the method of payment of its employees.

(b) Prior to that date, Krystal's management was aware of the provisions of the Fair Labor Standards Act, *supra,* including the provisions of 29 U.S.C. § 203(m), effective May 1, 1974, see *infra.*

(c) Such management relied at all pertinent times on the legislative history to the amendments in 1974 to such act and on 29 C.F.R., part 531, in establishing and adjusting its policies for the payment of its employees.

5. The minimum hourly wage rates applicable were:

(a) $1.90 from July 23, 1974 to December 31, 1974;

(b) $2 from January 1, 1975 to December 31, 1975;

(c) $2.50 from January 1, 1976 to June 26, 1976.

6. (a) Krystal's customer-service employees, who received gratuities (tips) from customers, included waiters, waitresses, cocktail waitresses, headwaiters, and headwaitresses.

(b) Krystal's noncustomer-service employees, who normally did not receive tips from customers, included hostesses,[2] hostess-administrative assistants, cashiers, pacers (i. e., busboys), head pacers, chefs, cooks, cooks-trainee, bartenders,[3] head bartenders, preparation persons, general utility persons, general kitchen-maintenance persons.

(c) The duties performed by such customer-service personnel and noncustomer-service personnel were those understood generally by the public to be performed by persons engaged in such respective activities.

7. (a) Krystal converted to its gross receipts all the tips received from its customers by its customer-service personnel from and including July 23, 1974 through August 10, 1974.

(b) Of such receipts thus derived, Krystal computed the respective amounts equal to 8% of the total sales generated by each of its customer-service employees and, of the resulting aggregate amount paid:

(1) 6½% thereof to its customer-service personnel, and

(2) 1½% thereof to its noncustomer-service personnel, excluding therefrom its cashiers.

(c) Krystal returned to each of its customer-service employees all amounts in excess of 8% of the total sales generated by such employees, and such employees retained all amounts of money thus returned.

(d)(1) In the event the aggregate amount paid Krystal's respective customer-service personnel totaled less than the rate of $2 per hour for each hour that person worked for Krystal, Krystal paid such employee an amount equal to $2 per hour for each hour worked.

---

1. All further references herein to Krystal refer to its activities in such division of its operations.

2. It was contrary to Krystal's policy for its hostesses to accept tips from its customers.

3. Bartenders retained the occasional gratuities they received from customers.

(2) In the event the aggregate amount paid Krystal's respective customer-service personnel totaled the rate of $2 for each hour that person had worked for Krystal, Krystal paid such employee no additional amount.

(e) Krystal's customer-service personnel agreed to the immediately foregoing method of compensation and accounted to Krystal in writing daily for the amount of tips that respective employee had received for that day.

8. (a) From August 11, 1974 until June 26, 1976, Krystal's customer-service employees contributed to a pool for the aggregate tips each had received from Krystal's customers an amount equal to 1½% of the total sales generated by such customer-service employee.

(b) The tips thus derived were apportioned by Krystal among its noncustomer-service personnel, excluding, until *circa* March 1, 1976, its cashiers.

(c) Except for the amount to which there is allusion in finding of fact no. 8(a), *supra,* Krystal paid its customer-service employees at the respective rates of $1.50 hourly during lunch-hours and $1.00 hourly during dinner-hours and the aggregate tips received by such employee, subject to the same conditions of minimum wages as found in findings of facts nos. 7(d)(1), (2), *supra.*

(d) Krystal's customer-service employees, who were in its employ on August 10, 1974, agreed to the immediately foregoing method of compensation and accounted to Krystal daily for the amount of tips that respective employee had received on that day.

9. On June 26, 1976 Krystal's method of compensating its employees instituted on August 11, 1974 was readjusted so as to:

(a) reduce the amount equal to 1½% of such total sales to an amount equal to 1% of such sales,

(b) exclude from the resulting pool apportionment Krystal's general utility, preparation and kitchen-maintenance personnel, cooks and cashiers, so that the only noncustomer-service personnel participating in such apportionment were pacers, bartenders and hostesses.

10. (a) From February 4, 1975 until June 26, 1976, Krystal compensated its employees in Memphis, Tennessee in the same respective methods as found in finding of fact no. 8, *supra.*

(b) From June 26, 1976 until the time of trial, Krystal compensated its employees in Memphis, Tennessee in the same method as found in finding of fact no. 9, *supra.*

(c) From June 20, 1977 until the time of trial, Krystal compensated its employees in St. Louis, Missouri in the same method as found in finding of fact no. 9, *supra.*

11. (a) The nature of the business requires Krystal's waiters, waitresses, headwaiters, headwaitresses, hostesses, hostesses-administrative assistants, head bartenders, bartenders, cocktail waitresses, chefs, cooks, cooks-trainee, head pacers and pacers to wear uniforms at all pertinent times.

(b) Krystal paid no allowance to its employees listed in finding of fact no. 11(a), *supra,* for maintenance of their uniforms prior to June 27, 1976.

(c) Krystal paid to every employee receiving wages at or near the applicable minimum hourly amount, who wore uniforms, an allowance for maintenance of their uniforms:

(1) of up to $2.20 from June 27 through December 31, 1976, and

(2) of up to $2.30 from January 1, 1977 until the time of trial herein,

related to the number of hours such respective employee worked for Krystal in a given week of work.

(d) The cost of uniforms and of their laundering reduced the wages of Krystal's employees, who were being paid an amount approximating the applicable minimum wage rate, below the applicable minimum wage rate.

12. (a) Krystal retained a portion of the tips received by its customer-service employees from July 23, 1974 through August 10, 1976.

(b) Such employees retained the tips thus received, except as found hereinabove, from and after August 11, 1976.

(c) There was no pooling of tips among Krystal's employees who customarily and regularly received tips from Krystal's customers.

13. Krystal's failure to obey the Fair Labor Standards Act, *supra,* has not been shown by plain and substantial proof to have been both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon it more than a compensatory verdict.

14. (a) Krystal paid its employees at all pertinent times an amount equal to 50% or more of the applicable minimum hourly wage.

(b) The customer-service employees, pacers, and bartenders of Krystal are eligible for participation in the aforementioned pool of tips and receive customarily and regularly as tips from customers or by apportionment of such pools amounts exceeding $20 monthly, each.

15. Krystal informed each of its employees in sufficient substance of the provisions of 29 U.S.C. § 203(m).

16. Krystal did not pay all its employees the applicable minimum hourly wages before June 26, 1976.

17. Although Krystal has not carried its burden of proving that its violations were not wilful, little probability appears that it will commit violations of the Fair Labor Standards Act, *supra,* in the future, and the embarrassment to Krystal flowing from an injunction herein would be disportionate to its past and present violations thereof.

18. The violation of the Fair Labor Standards Act, *supra,* by Krystal was wilful for the purposes of 29 U.S.C. § 255(a).

The Court reaches the following

### CONCLUSIONS OF LAW:

A. This Court has jurisdiction of the parties and of the subject matter hereof. 29 U.S.C. §§ 201, et seq.

B. Krystal is an enterprise engaged in commerce. 29 U.S.C. §§ 203(r), (s)(1).

C. Because all tips received by Krystal's customer-service employees were not retained by such employees and were not pooled among its employees who customarily and regularly received tips from customers, Krystal was prohibited, in determining the wage of the respective customer-service employees, to deem the respective amounts paid such employees to be increased on account of tips by an amount not in excess of 50% of the applicable minimum wage rate determined by Krystal. 29 U.S.C. § 203(m); *Richard v. Marriott Corp.,* C.A. 4th (1977), 549 F.2d 303, 305[1].

D. (1) The right conferred upon Krystal's employees by the Fair Labor Standards Act, *supra,* was a statutory right affecting the public interest.

(2) Any waiver or release by such employees of such right contravened the policy of the Fair Labor Standards Act, *supra.*

(3) " * * * [A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy. * * * " *Brooklyn Savings Bank v. O'Neil* (1945), 324 U.S. 697, 704, 65 S.Ct. 895, 900, 89 L.Ed. 1296, 1307 (headnote 4).

E. Krystal was required to pay at all pertinent times the cost of uniforms and of their laundering where such cost reduced its employees wages below the applicable minimum wage rate. 29 C.F.R. part 3(d)(2)(iii); *cf. Tobin v. Aibel,* D.C.N.Y. (1952), 112 F.Supp. 156, 158[3], affirmed *sub nom. Durkin v. Aibel,* C.A. 2d (1953), 204 F.2d 376.

F. (1) An award of liquidated damages for violation of the Fair Labor Standards Act, *supra,* is discretionary; but, in the absence of proof that Krystal's failure to obey that statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon it more than a compensatory verdict, this Court lacks discretion to reduce Krystal's liability for the equivalent of double unpaid wages. *McClanahan v. Mathews,* C.A. 6th (1971), 440 F.2d 320, 322[1].

**14**

■ (2) Liquidated damages for failure to pay the applicable minimum wage rate are compensatory. *Overnight Motor Company v. Missel* (1942), 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682, 1690–1691 (headnote 9).

■ G. This cause of action was commenced timely, 29 U.S.C. § 255(a), as Krystal did not carry its burden of proving its affirmative defense of nonwilfulness. *Coleman v. Jiffy June Farms, Inc.*, C.A. 5th (1971), 458 F.2d 1139, 1141–1142[1], certiorari denied (1972), 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219.

■ H. Where, as here, there are indications that the management of an employer desires to comply completely with the law, no injunction against future violations should be granted. *Hodgson v. Barge, Waggoner and Sumner, Incorporated*, D.C. Tenn. (1972), 377 F.Supp. 842, 845[4], affirmed C.A. 6th (1972), 477 F.2d 598 (table).

Based upon the foregoing findings of fact and conclusions of law, this Court renders the following

## DECISION.

The plaintiff Secretary of Labor is granted relief, to the extent that the defendant The Krystal Company hereby is restrained from withholding from the employees of its Loft Steakhouse Division (a) that portion of the tips of its customer-service employees distributed to ineligible participants in any tip pool in the period from July 23, 1974 to June 26, 1976; (b) the tip credit it took for its customer-tipped employees in the period from August 11, 1974 to June 26, 1976; (c) one-half of the minimum wage due its customer-service employees in the period from July 23, 1974 to August 10, 1974; (d) an allowance for uniform maintenance everywhere payment of such cost by its employees reduced any such employees' wages below the applicable minimum wage rate; and (3) an amount as liquidated damages equal to the aggregate of such amounts required not to be withheld from its employees. As to the plaintiff's claim of relief in the form of a permanent injunction, all relief hereby is DENIED. Rule 58(2), Federal Rules of Civil Procedure.

The defendant will be ordered further in the judgment to be entered herein to compute forthwith from its records and present to representatives of the plaintiff for verification the respective foregoing amounts it is restrained from withholding from its employees. Upon such computation, verification and presentation of the foregoing amounts to the clerk, the clerk will enter final judgment herein.