Eric DAVIS and Christine Davis, Plaintiffs,

v.

B & S, INC., d/b/a Showgirl I, et al., Defendants.

No. 1:98–CV–49.

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 13, 1998.

---

708

Chris K. Starkey, Fort Wayne, IN, for Eric Davis, plaintiff.

Chris K. Starkey, Fort Wayne, IN, Daniel J. Millea, Rolf E. Gilertson, Zelle and Larson, Minneapolis, MN, Brad Shafer, Lansing, MI, for Christine Davis, plaintiff.

James P. Buchholz, Miller Carson Boxberger and Murphy, Fort Wayne, IN, Mark A. Thoma, Jeffrey P. Terrill, Tremper Bechert Leonard and Terrill, Fort

Wayne, IN, Brad Shafer, Lansing, MI, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. INTRODUCTION

This matter is before the Court[1] on the motion for summary judgment filed by the Plaintiffs, Eric Davis ("Mr.Davis") and Christine Davis ("Ms.Davis") (collectively "the Plaintiffs"), on July 27, 1998. The Defendants, B & S, Inc., AJDD Inc., and Showgirl III, Inc. (collectively "the Defendants") responded on September 4, 1998, the Plaintiffs replied on September 17, 1998, and the motion is ripe for review. The entire factual record consists of the affidavit of Mr. Davis ("E. Davis ¶ ___") with attached W–2 tax forms and employee payroll forms; the affidavit of Ms. Davis ("Christine aff. ¶ ___") with attached W–2 tax forms; the affidavit of James Butler ("Butler aff. ¶ ___"); and the affidavit of Thomas J Grant. ("Grant aff. ¶ ___").

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons hereinafter provided, the Plaintiffs' motion will be DENIED.

### II. FACTUAL BACKGROUND

The Plaintiffs' complaint asserts that the three corporate defendants violated the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA"). The three Defendants are separate corporate entities, each of which operates a separate nightclub. Defendant B & S, Inc. owns and operates the nightclub "Showgirl I," Defendant AJDD, Inc. owns and operates the nightclub "Showgirl II," and Defendant Showgirl III, Inc. owns and operates the nightclub "Showgirl III."

Notwithstanding the separate corporate ownership of the three "Showgirl" nightclubs, it appears that the nightclubs are all operationally interconnected in some way, although this point is never fully explained. For example, the titles of the three nightclubs are obviously related, and the nightclubs appear to employ the same people simultaneously, such as Ms. Davis and James Butler ("Butler"), who is employed as the General Manager of all three nightclubs. This conclusion is bolstered by the Defendants' answer, which explains that Butler's father owns a substantial amount of stock in all three corporations. (See Def. Answer Rhet. ¶ 14.)

Moreover, the Plaintiffs consistently refer to the "Defendants" collectively, rather than distinguishing between the individual nightclubs or corporate owners, and we shall also adopt that convention. We now turn to the specific factual circumstances of each Plaintiff.

#### A. Eric Davis

Mr. Davis began employment with Showgirl III, Inc. as a disc jockey after March 15, 1997, and worked exclusively at the Showgirl III nightclub until his termination in January 1998. (E. Davis aff. ¶¶ 1–2). Mr. Davis' initial salary was $6.00 per hour, but in late March 1997 he agreed to a salary of $2.13 per hour in cash wages plus tips. (Butler aff. ¶¶ 21–24). The W–2 forms presented by Mr. Davis indicate that he received $2,145.00 in tip income in 1997. This figure is disputed by Butler, who asserts that the W–2 forms are in error, and that Mr. Davis earned anywhere between $600.00 and $1,200.00 weekly in tips. (Id. ¶¶ 19, 26.)

Mr. Davis also contends that he was never notified of the applicable FLSA provisions or their affect on his cash wage, (E. Davis aff. ¶ 5), but we must accept at this juncture the Defendants' contention that Butler discussed the cash wage rate in

---

**1.** Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all

parties consenting.

relation to the FLSA. (Butler aff. ¶ 25.) Mr. Davis further contends that he was required to share his tip income with other employees, including Butler. (E. Davis aff. ¶ 4.) Mr. Davis does not explain who these "other" employees were, or what sort of tip sharing arrangement he had with them, but only asserts that he was required to pay a set amount of his tips into these tip sharing arrangements.

However, Butler's uncontradicted affidavit offers some missing details. Butler asserts that Mr. Davis received tips directly from customers, and also received tips from the entertainers who performed at the nightclub through a voluntary tip pooling arrangement. (Butler aff. ¶¶ 30, 32.) According to Butler, each entertainer would give Mr. Davis either $10.00 or ten percent of the tips they received from customers as a gesture of gratitude for his work in assisting their performances by setting up lights, playing music, etc. (Id. ¶ 31.)

■ Butler further asserts that part of his duties as General Manager of Showgirl III included serving as an assistant to the disc jockey by operating the stage lights, setting up music routines for the entertainers, and the like. (Id. ¶ 6.) Mr. Davis worked approximately three nights a week, and Butler asserts that they had a voluntary tip pooling agreement by which Mr. Davis paid Butler out of his tip income $40.00 each night he worked. (Id. ¶ 32.)[2]

### B. Christine Davis

Ms. Davis commenced employment with the Defendants as a waitress prior to February 9, 1995, and worked for the Defen-

dants through her resignation in January 1998. (C. Davis aff. ¶¶ 1–4.) According to tax records provided by Ms. Davis, she was employed by Defendants B & S, Inc. and AJDD, Inc. in 1995, by Defendant B & S in 1996, and by Defendants B & S, Inc. and Showgirl III, Inc. in 1997.

The parties agree that Ms. Davis was paid $2.50 per hour in cash wages during her employment with the various nightclubs, and also received tips from customers. (Id. at ¶ 5.) The W–2 forms presented by Ms. Davis indicate that she received $875.00 in tip income in 1995, $2,120 in tip income in 1996, and $2,635.00 in tip income in 1997. These figures are disputed by Butler, who asserts that the W–2 forms are in error, and that Ms. Davis earned between $150.00 and $300.00 in tips a night. (Butler aff. ¶¶ 14–15.)

In any event, Ms. Davis contends that she was required to pay ten percent of her tip income to other employees. (Id.) However, we must credit the Defendants' version of the facts as the non-moving party, and they contend that Ms. Davis participated in a voluntary tip sharing arrangement with the bartenders. (Butler aff. ¶ 10.)[3] Ms. Davis also asserts that the Defendants never informed her that her cash wages were below the minimum wage requirement as required by the FLSA's tip credit provision, (C. Davis aff. ¶ 6), but again we must accept the Defendants' version of things, which discloses that Ms. Davis was notified by Butler that Defendants intended to use the tip credit provision of the FLSA. (Butler aff. ¶ 12.)

---

**2.** Butler's assertion that his tip pooling arrangement with Mr. Davis was voluntary appears to contrast with the Defendants' Answer to the complaint, which admits that "at times Eric Davis was required to pay a set amount [of his tips] to co-workers." (Def. Answer Rhet. ¶ 11.) Concessions in pleadings are judicial admissions that bind the party making them and they operate to withdraw admitted facts from contention. *Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir.1998) (citing *Keller v. United States*, 58 F.3d 1194, 1198 n.

8 (7th Cir.1995)). Indeed, to the extent that the Defendants' Answer can be understood to admit that Mr. Davis was required to share his tips, such a judicial admission is conclusive unless the Court allows it to be withdrawn. *Keller*, 58 F.3d at 1198 n. 8.

**3.** Neither the Plaintiff nor the Defendants elaborate on any of the details of Ms. Davis' tip pooling arrangement with the bartenders.

## III. STANDARD OF REVIEW

The Court will grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We do not weigh the evidence submitted by the parties, or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, we view all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Vanasco v. National–Louis Univ.,* 137 F.3d 962, 965 (7th Cir.1998). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

## IV. LEGAL PRINCIPLES

Employers in the United States are required to pay employees a minimum wage. 29 U.S.C. § 206(a)(1) (1998). The hourly minimum wage was set at $4.25 on April 1, 1991, increased to $4.75 on October 1, 1996, and to $5.15 on September 1, 1997. 29 U.S.C. § 206(a)(1) (1994 & West Supp. 1997). However, Congress has provided an exception to this minimum wage requirement in that employers are permitted to pay less than minimum wage to employees who receive tips. 29 U.S.C. § 203(m) (1998). The mechanism that § 203(m) creates is known as the "tip credit." The tip credit allows employers to use a portion of the employee's tip income to supplement its minimum wage obligation to the employee, so long as the employee's combined cash wage and tip income meets or exceeds the minimum wage. During the time period relevant to this case, an employer was required to pay its tipped employees a cash wage of at least $2.13 an hour and the employer was then allowed the tip credit for the difference between the wage paid and the prevailing minimum wage.[4]

However, Congress requires employers to meet certain conditions in order to qualify for the tip credit. First, employers can only take the tip credit toward the wages

---

**4.** Congress amended § 203(m) on August 20, 1996. *See* 29 U.S.C. § 203(m) (1998) (as amended by the Small Business Job Protection Act of 1996, Pub.L. 104–188, § 2105(b), 110 Stat. 1755, 1929) (effective August 20, 1996). Prior to the amendments, employers were required to pay tipped employees a cash wage "by an amount determined by the employer, but not an amount in excess of ... 50 percent of the applicable minimum wage rate after March 31, 1991." 29 U.S.C. § 203(m) (1994). As mentioned *supra,* the minimum wage rate after March 31, 1991 and prior to the 1996 amendments was $4.25 an hour. Thus, prior to the 1996 amendments employers were required to pay a cash wage of at least $2.13. ($4.25 an hour × 0.50 = $2.125 = $2.13 rounded up).

The 1996 amendments to § 203(m) eliminated the "50 percent of the applicable minimum wage" calculation and set the cash wage requirement for tipped employees at $2.13. *See* 29 U.S.C. § 203(m)(1) (1998) ("the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996");

*see also* H.R.Conf.Rep. No. 104–737, at 360 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1474, 1852 (noting that the 1996 amendments set the cash wage paid by employers to tipped employees at $2.13 and allow tips to be counted toward the remainder of the minimum wage obligation); Employment Standards Admin., Wage and Hour Div., U.S. Dep't of Labor, Wage and Hour Pub. 1318, The fair Labor Standards Act of 1938, as amended, at 3 n. 15 (rev. July 1997) (noting that the required cash wage for tipped employees under § 203(m) is now $2.13, which is 50% of the $4.25 minimum wage specified in § 206(a)(1) on August 20, 1996).

Therefore, for our purposes, the Defendants were required to pay the Plaintiffs a cash wage of at least $2.13 an hour during the time period relevant to this case. The 1996 amendments did not substantively change the provisions of § 203(m) regulating how the tip credit functions and the requirements employers must follow to use the tip credit, and we shall hereafter cite to the FLSA language after the 1996 amendments to avoid confusion.

of employees who qualify as "tipped employees" under 29 U.S.C. § 203(t) (1998).[5] Second, employers must ensure that a tipped employee's total income meets or exceeds the minimum wage level. § 203(m) also requires an employer to satisfy two other conditions to qualify for the tip credit:

> The [tip credit] shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (1998). *See generally Kilgore v. Outback Steakhouse of Florida*, 160 F.3d 294, 298 (6th Cir.1998); *Reich v.. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir.1994); *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322 (1st Cir.1992); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467–68 (5th Cir.1979); *Richard v. Marriott Corp.*, 549 F.2d 303, 304–05 (4th Cir.1977); WAGE AND HOUR DIVISION, U.S. DEP'T OF LABOR, FIELD OPERATIONS HANDBOOK §§ 30d00 – 30d09 (1988) ("FIELD OPERATIONS HANDBOOK"); 5 EMPLOYMENT COORDINATOR (RIA) ¶¶ C–14,110 – C–14,126 (1997) ("EMPLOY.COORD."); 48A AM.JUR.2D *Labor and Labor Relations* §§ 4232 – 4238 (1994 & Supp.1997).

## V. DISCUSSION

The Plaintiffs contend that they are entitled to summary judgment because the Defendants cannot show that they complied with the requirements of § 203(m). Specifically, the Plaintiffs argue that: (1) their respective incomes did not exceed the minimum wage; (2) the Defendants failed to give them proper notice of their intention to take the tip credit; and (3) they were not permitted to retain all of their tips because they were forced to participate in invalid tip pool arrangements. The

Defendants argue in response that issues of fact remain as to whether these requirements were met. Against this backdrop, we shall proceed to analyze whether genuine issues of material fact remain as to these three contentions.

### A. Income Requirement

The Defendants have the burden of showing that genuine issues of material fact remain as to whether they paid the Plaintiffs an appropriate cash wage, as well as whether the combined cash and tip income of each respective Plaintiff met the minimum wage requirement. *See, e.g., Tiffany English Pub*, 597 F.2d at 467 (burden of proving amount of tips received is on employer); FIELD OPERATIONS HANDBOOK § 30d00(b) ("Section 3(m) of the FLSA makes clear the intent of Congress to place on the employer the burden of proving the amount of tips received by 'tipped employees', and the amount of tip credit, if any, which the employer may claim.").

Mr. Davis acknowledges that he was paid $6.00 an hour from the beginning of his employment with the Defendants through March 1997, and that he then earned a cash wage of $2.13 an hour throughout the remainder of his employment with the Defendants. Similarly, Ms. Davis acknowledges that she received a cash wage of $2.50 an hour while she worked for the Defendants. Therefore, summary judgment may not be granted on the issue of whether the Defendants paid the Plaintiffs at least $2.13 an hour as was required by § 203(m). However, the factual issue at the heart of this case is whether the tips received by the respective Plaintiffs, when added to the wages they actually were paid, exceeded the required minimum wage.

The Plaintiffs rely upon their W–2 tax forms and payroll records to argue that their tip income while they worked with the Defendants was not sufficient to bring their respective incomes above the mini-

---

5. The parties agree that both Plaintiffs were "tipped employees" for purposes of § 203(t).

mum wage.[6] This documentation appears to bear out the Plaintiffs' contention and, without delving into the arithmetic, the Plaintiffs' W–2 forms indicate that the Plaintiffs did not earn the minimum wage during the relevant time periods. The Defendants do not contest this observation, but rather argue that the W–2 forms are in error, and that they simply do not accurately reflect the Plaintiffs' tip income.

The Defendants bolster their position with the affidavit testimony of Butler, who states that Mr. Davis earned "at a minimum, no less than $600.00 per week in tips and as much as $1,200.00 per week in tips" during the time he worked at Showgirl III, and that Ms. Davis typically earned between $150.00 and $300.00 per night while employed with the Defendants. (Butler aff. ¶¶ 14, 26.) We must take as true the evidence supplied by the Defendants on this issue as the non-moving party, and Butler's testimony clearly creates a factual dispute as to whether the respective Plaintiffs' tip income pushed them over the minimum wage.[7]

█ The Plaintiffs attack Butler's testimony with two arguments. First, they contend that the Defendants are essentially estopped from claiming that the Plaintiffs received tip income far greater than the tip income reported on their W–2 forms, because the forms were prepared "under oath" and submitted to the IRS. This argument misconstrues the legal significance of the doctrine of judicial estoppel, as well as the statutory requirement surrounding the preparation of W–2 forms. *See* 26 U.S.C. § 6051(a).[8]

█ The purpose of the doctrine of judicial estoppel is to "reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant." *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998); *see also Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 603 (7th Cir.1998) ("The doctrine of judicial estoppel is based upon the equitable principle that, 'if a party wins a suit on one ground, it can't turn around and in further litigation with the same opponent repudiate the ground in order to win a further victory.' ") (quoting *Ladd*, 148 F.3d at 756).

Here, the Defendants have never asserted in their pleadings that the Plaintiffs' W–2 forms are an accurate representation of the tips they received during the time period the Plaintiffs worked for the Defendants, and there are apparently no other judicial proceeding between the parties regarding these issues. In fact, the Defendants have "admitted" the accuracy of the W–2 forms only by submitting them to the IRS; their pleadings in this Court have not been inconsistent on this score. Therefore, the doctrine of judicial estoppel does not preclude the Defendants from submitting affidavits to contradict the statements they made to the IRS via the Plaintiffs' W–2 forms.[9]

---

6. Form W–2 is a tax form which employers are required to prepare to document payments made from the employer to the employee, including, *inter alia*, wages and tips. *See* 26 U.S.C. § 6051(a); Treas.Reg. § 1.6041–2(a)(1); *see generally* 33A Am.Jur.2d *Federal Taxation* ¶¶ 9, 124–9,125 (1998).

7. Butler's affidavit makes the Defendants' assertion that the W–2 forms are "in error" something of an understatement. For example, Mr. Davis' W–2 form indicates that he received $2,145.00 in tips during the 41 weeks he worked in 1997. According to Butler, Mr. Davis would have actually received, at a minimum, $24,600.00 in tips during 1997.

8. Of course, employers who willfully furnish a false W–2 form to an employee are subject to both criminal and civil penalties. *See* 26 U.S.C. § 6674 (civil penalties); 26 U.S.C. § 7204 (criminal penalties).

9. This conclusion is bolstered by the fact that the IRS allows employers to correct erroneous W–2 forms by filing IRS Form W–2c. *See* 33A Am.Jur.2d *Federal Taxation* ¶ 9124 n. 3 (citing Instructions Form W–2 (1997) p. 3). Certainly employers should not be estopped from claiming that representations they made on an employee's W–2 form are inaccurate if the IRS provides them with the opportunity to correct such errors. Of course, the Plaintiffs may raise the inconsistencies between But-

The Plaintiffs' second attack on Butler's affidavit is that this evidence is based upon inadmissible hearsay, and therefore cannot serve to defeat a motion for summary judgment. *See, e.g., Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996) ("a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment."). This argument appears to be directed at statements in the Butler and Grant affidavits which refer to discussions among the Defendants and their accountant related to current efforts to amend the Plaintiffs' W–2 forms. (*See* Butler aff. ¶ 19; Grant aff. ¶¶ 8–10.) However, this hearsay challenge does not implicate paragraphs 14 and 26 of Butler's affidavit, which assert, based on Butler's personal knowledge, that the Plaintiffs' tip income easily exceeded the minimum wage. The material issue in question here is simply the amount of income the Plaintiffs received from tips, not whether the Defendants are seeking to amend the W–2 forms; indeed, the statements challenged by the Plaintiffs as "hearsay" do not go to the question of the amount of tip income actually earned by the Plaintiffs. Butler's testimony on this point, purportedly based on his personal knowledge, clearly raises a genuine issue of material fact as to whether the Plaintiffs' tip income, when combined with their respective cash wages, exceeded the minimum wage.

### B. Tip Retention Requirement

Employers may not take advantage of the tip credit unless the employee has been allowed to "retain" all the tips that the employee received. § 203(m) (1998). "Thus, the effect of the language of [§ 203(m) ] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belongs to the employer and must be turned over to the employer." FIELD OPERATIONS HANDBOOK § 30d01(a); *see also* EMPLOY. COORD. ¶ C–14,115.[10] Courts have interpreted this requirement to mean that an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips. *See Tiffany English Pub,* 597 F.2d at 467–68 (employees were entitled to receive from their employer the full minimum wage where they were not allowed to keep all of the tips they received) (citing *Marriott Corp.,* 549 F.2d at 304–05); *Wright v. U–Let–Us–Skycap Servs., Inc.,* 648 F.Supp. 1216, 1217 (D.Colo.1986) (agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of § 203(m)); *Marshall v. Krystal Co.,* 467 F.Supp. 9, 13 (E.D.Tenn.1978) (restaurant could not consider its employees' tips as a portion of their wages where the employees were not permitted to keep all the tips they received); *Brennan v. Haulover Shark and Tarpon Club, Inc.,* No. 74–1276–Civ., 1986 WL 587, at *16 (S.D.Fla. Jan. 27, 1996) (employer lost tip credit when it diverted a portion of employee's tips to a "vacation fund" for long term employees).

However, the employer may still take advantage of the tip credit for employees who participate in a tip pooling agreement,

---

ler's affidavit and the W–2 forms prepared by the Defendants in addressing Butler's credibility at trial.

**10.** The regulations governing payment of wages to tipped employees indicate that employment agreements requiring that tips be turned over to employers are valid as long as employers pay tipped employees the full minimum wage. *See* 29 C.F.R. § 531.59. However, these regulations have been superseded by the 1974 amendments to the FLSA, *see* Pub.L. No. 93–259, § 13(e), 88 Stat. 58, 64 (1974) (amending 29 U.S.C. § 203(m)), and therefore these regulations do not reflect the current state of the law as interpreted by the Wage and Hour Administrator of the Department of Labor. EMPLOY.COORD ¶ C–14,112; 48A AM. JUR. *Labor and Labor Relations* § 4234 & n. 36 (1994).

so long as those employees are employees who "customarily and regularly receive tips." § 203(m) (1998). *Compare Kilgore,* 160 F.3d at 301 (tip pool valid), and *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802–03 (E.D.Ark.1990) (same), *with Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98, 101 (E.D.Tenn.1979) (tip pool invalid), and *Krystal Co.,* 467 F.Supp. at 13 (same). *See also* 29 C.F.R. § 531.54 (1998); Field Operations Handbook § 30d04(b); Employ. Coord. ¶ C–14,116.

### 1. Eric Davis

Mr. Davis argues that the Defendants violated the tip retention requirement because he was required to participate in a tip pool with Butler, who illegally controlled a portion of his tips.[11] Mr. Davis can only prevail on this argument, however, if Butler was an "employer" as a matter of law under FLSA, because "employers" are not entitled to participate in tip pool arrangements with employees. *See Continental Cuisine,* 751 F.Supp. at 802; Field Operations Handbook § 30d01(a) ("Thus, the effect of the language of [§ 203(m) ] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belong to the employer and must be turned over to the employer.").

However, the only information Mr. Davis offers regarding the tip pool is that it was mandatory, that he was required to pay a set amount of his tip income into the pool, that he received a set amount of money from the tip pool, and that Butler participated in the pool. (E. Davis aff. ¶ 4.) Butler, on the other hand, contends that Mr. Davis received a portion of the tips earned by the entertainers of the nightclub pursuant to an agreement where each entertainer would give Mr. Davis $10.00 or ten percent of the tips they received in recognition of his work in assisting them, and that this arrangement was voluntary. (Butler aff. ¶ 4.) Butler further explains that he and Mr. Davis had a voluntary arrangement in which Mr. Davis gave Butler $40.00 from his tip money every night he worked, presumably to recognize Butler's disk jockey assistance. (Butler aff. ¶¶ 6, 29.)

It is well established that an individual can be considered an "employer" under the FLSA. 29 U.S.C. § 203(d) (" 'Employer' includes *any person* acting directly or indirectly in the interest of an employer in relation to an employee ...") (emphasis added); *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987); *Dole v. Simpson,* 784 F.Supp. 538, 545 (S.D.Ind. 1991) ("A host of decisions from federal courts of all levels make clear that individuals ... may be personally liable for FLSA violations."). Courts do not depend on traditional common law concepts in determining whether an individual is an "employer" under the FLSA, but rather look to the "economic reality" of the employment relationship. *See, e.g., Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 31–33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961); *Simpson,* 784 F.Supp. at 545.

The ultimate question facing the Court in the "economic reality" inquiry is whether the individual had control over the alleged FLSA violation. *See Riordan,* 831 F.2d at 694 (individuals may be held liable under the FLSA "provided that [individu-

11. The Defendants attempt to assert that the tip pool was voluntary, *see supra* note 2, but this dispute is of no consequence. *See Kilgore,* 160 F.3d at 303 ("Department of Labor regulations and court decisions interpreting subsection 203(m) of the FLSA recognize that mandatory tip-pooling provisions are permissible forms of tip sharing."); *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 800, 803 (E.D.Ark.1990) (upholding tip pool arrangement in which waitresses and waiters were required to pool their tips with the maitre d'); *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98, 102 (E.D.Tenn.1979) (mandatory tip pool does not *per se* violate § 203(m)); Field Operations Handbook § 30d04(b) ("it is not necessary that the pooling be voluntarily consented to by the employees involved"); Employ.Coord. ¶ C–14,116 (despite apparent regulation to the contrary [29 C.F.R. § 531.54], tip pooling arrangements need not be mutually agreed upon by the employees).

al] had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation."); *Simpson,* 784 F.Supp. at 545 (citing *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984)). The "economic reality" test is a fact-based inquiry, and therefore is not subject to a rigid, formalistic approach, but courts have often looked to the four factors outlined by the Ninth Circuit in *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983), as a framework to guide their inquiry. These factors include whether the individual in question (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.[12]

Indeed, while not mentioning the *Bonnette* factors by name, several courts faced with factual scenarios somewhat similar to the one at bar have analyzed whether an individual is an "employer" under the FLSA using substantially similar criteria. In *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 329 (5th Cir.1993), the plaintiffs sought to impose FLSA liability on an individual who was a consultant at a nightclub that featured topless dancers. The evidence showed that the consultant hired two of the dancers, gave specific instructions to employees, removed money from the nightclub's safe, signed the employee's payroll checks, and spoke for the corporate defendant during an investigation into possible FLSA violations at the nightclub. *Circle C.,* 998 F.2d at 329. Based on this evidence, the Fifth Circuit affirmed the district court's determination that the consultant was an "employer" within the meaning of the FLSA. In contradistinction,

the restaurant maitre d' in *Continental Cuisine* had some supervisory duties over other employees, but did not hire and fire employees, control the methods of the restaurant's operation, set hourly wages, or control the payroll. *Continental Cuisine,* 751 F.Supp. at 803. Accordingly, the court held that the maitre d' was not an "employer" within the meaning of the FLSA.

■ With these cases as a guide, we now turn to evidence pertaining to Butler's status as an employer in this case, which consists entirely of Butler's affidavit. Butler asserts that in his position as General Manager he does not have the ultimate authority to hire and fire employees, but only to make recommendations as such. (Butler aff. ¶ 8.) Similarly, Butler denies that he has the power to "control the methods of operating the business, set hourly wages, or control payroll." (*Id.*) . Clearly, when viewed through the prism of the "economic reality" factors, this rather paltry record suggests that although Butler apparently has some supervisory power, his duties more closely equate with those of the maitre d' in *Continental Cuisine,* rather than the consultant in *Circle C.* Therefore, it cannot be said that Butler is an "employer" within the meaning of the FLSA as a matter of law, and consequently genuine issues of material fact remain as to whether he was prohibited from participating in a tip pool with Mr. Davis.

This conclusion is bolstered by the fact that the record supports a reasonable inference that Butler was acting in his own interests, and not in the interests of his employer as required by the statute, when he accepted (and presumably retained) tips from customers and participated in a tip pool arrangement with Mr. Davis. Stated

12. The Court recognizes that the Seventh Circuit has noted that the *Bonnette* factors are particularly appropriate where it is clear that some entity is an "employer" under the FLSA, and the question is which one. *See Vanskike v. Peters,* 974 F.2d 806, 809 (7th Cir.1992); *see also Morgan v. MacDonald,* 41 F.3d 1291, 1293 (9th Cir.1994) ("The *Bon-* *nette* factors are properly applied when an individual is clearly employed by one of several entities and the only question is which one."). Here, of course, the question is not which entity is an "employer," but whether a particular individual is also an employer; nevertheless, the *Bonnette* factors are still helpful.

somewhat differently, this record clearly raises issues of fact as to whether Butler was a "tipped employee" under § 203(t), at least with regard to his work in assisting the disc jockeys. (*See* Butler aff. ¶¶ 6–7.)[13] This is significant because the tip retention requirement of § 203(m) is really a subset of § 203(t), such that if questions of fact remain as to whether certain employees are "tipped employee[s]" under § 203(t), it necessarily follows that questions of fact arise as to whether those employees are permitted to participate in a tip pool under § 203(m). *Kilgore*, 160 F.3d at 301 ("if a tip-pool participating employee fulfills the subsection 203(t) requirements, [he] necessarily fulfills the subsection 203(m) requirements as well."). Accordingly, because issues of fact remain as to whether Butler was a "tipped employee" with regard to his work with the disc jockeys, the validity of his participation in the tip pool with Mr. Davis under § 203(m) cannot be resolved as a matter of law. *Id.*

### 2. *Christine Davis*

Ms. Davis argues that she was forced to take part in an invalid tip pooling agreement because the Defendants required her to pay 10% of her tips to the "bartenders." Pl.Mem. in Supp. at 5.[14] Ms. Davis' only argument on this point appears to be that the tip pool was invalid because while the bartenders received money from the tip pool, they did not contribute to it.[15] This

argument must fail because the record is devoid of any supporting facts (i.e., evidence describing which employees participated in the pool, the operation of the tip pool, or the relative contributions of the employees participating in the pool).

However, this argument would not prevail even if the record contained such evidence because tip pools in which some employees receive money from the pool without contributing to it are not *per se* invalid. *See Kilgore*, 160 F.3d at 301–02 (upholding a tip pool in which certain employees derived their tip income solely from the tip pool; these employees were not allowed to take tips from customers and therefore had no tip income to contribute to the pool); *Continental Cuisine*, 751 F.Supp. at 800–01 (upholding a mandatory tip pool that benefitted a maitre d' who did not receive tips himself or contribute to the pool; wait staff contributed forty percent of the tip income to the pool); *Krystal Co.*, 467 F.Supp. at 13 (finding that waiters, bus persons, and bartenders were permitted to derive their tip income from a tip pool); 29 C.F.R. § 531.54 (tip pools may include employees such as busboys, who do not themselves receive tips from customers and therefore would not have any tip income to contribute to the pool). Therefore, the mere fact that the bartenders may have received money from the tip pool but were not required to contribute to the

---

13. Butler's affidavit indicates that as General Manager of the three nightclubs he customarily and regularly received tips for his work in assisting the disk jockeys. This evidence is not challenged by the Plaintiffs, and supports the reasonable inference that employees in Butler's occupation customarily and regularly received tips, and that in this instance Butler received more than $30 a month in tips. Therefore, this evidence raises a question of fact as to whether Butler was a "tipped employee" under § 203(t).

14. Ms. Davis states in her affidavit that she was required to pay 10% of her tips to "co-employees." C. Davis aff. ¶ 5.

15. Ms. Davis does not, for example, present evidence to support an argument that the bartenders were prohibited from participating in the tip pool because they were not "tipped employees" under § 203(t). *See, e.g., Elkins v. Showcase, Inc.*, 237 Kan. 720, 704 P.2d 977, 989 (1985) (holding that tip pool including non-service bartenders was invalid because the non-service bartenders were not tipped employees under § 203(t) because they "were located behind a wall and were not in a position to receive tips"); Field Operations Handbook § 30d04(a)(5) (listing "service bartender" as an occupation that is generally not prohibited from participating in tip pools because they customarily and regularly receive tips).

pool does not render the pool invalid as a matter of law.[16]

In sum, genuine issues of material fact exist as to whether the Defendants satisfied the tip retention requirement of § 203(m).

## C. Notice Requirement

Finally, the Defendants must demonstrate that they gave the Plaintiffs notice that their cash wages were being decreased under the FLSA's tip credit provision. *See Kilgore,* 160 F.3d at 298–300; *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 403 (3d Cir.1994); *Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1322–23 (1st Cir.1992). The notice requirement is a firm one because Congress has expressly conditioned the tip credit on giving such notice to the employee. *Chez Robert,* 28 F.3d at 404 (quoting *Tango's Restaurant,* 969 F.2d at 1323). Consequently, courts have consistently held that an employer that fails to give the required notice is liable to the employee for the entire minimum wage, regardless of how much money the employee actually earned. *Id.* (collecting cases).

At first blush, the notice issue seems easily resolved. The Plaintiffs assert that the Defendants never gave them notice of their intention to pay less than the minimum wage so as to take advantage of the FLSA tip credit provision, while the Defendants assert that they gave both of them adequate notice. Since we must credit the Defendant's version as the non-moving party, it would appear that summary judgment could be denied on this point without further discussion.

However, the Plaintiffs seize upon an apparent element of circularity in the Defendants' reasoning to argue that they are

nevertheless entitled to summary judgment. After all, § 203(m) requires that the employee "must be informed by the *employer* of the [tip credit] provisions," (emphasis added), and apparently Butler was the only person who allegedly provided any type of notice to the Plaintiffs. Therefore, as the Plaintiffs see it, if Butler is not the "employer" when it comes to sharing Mr. Davis' tips, he suddenly cannot become the "employer" when it comes to providing notice under § 203(m).

Nonetheless, the real issue here is "how" the employer may convey the information required by the notice provision of § 203(m). The only reported decision the Court discovered that addresses this question is *Kilgore,* in which the Sixth Circuit answered the question as follows:

> As to how the employer may deliver that information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily "explain" the tip credit... The statute requires that the employee be "informed" of the tip credit. As the magistrate judge concluded, "inform" requires less from an employer than the word "explain" would.

*Kilgore,* 160 F.3d at 298. In *Kilgore,* the defendant employer had provided its employees with a "file folder" containing various written materials, including a statement describing the employer's tip policy. This written statement fully quoted § 203(m), and expressly informed the reader that "tips will be used as a credit against the minimum wage as permitted by federal and/or state law." *Id.* at 299. The Sixth Circuit held that the written materials provided by the defendant adequately informed the employees of the tip

**16.** We also note in passing that there is nothing presumptively invalid about the fact that Ms. Davis was required to furnish ten percent of her tips to the pool. *See Kilgore,* 160 F.3d at 297, 302–03 (neither the FLSA nor the applicable regulations limit the amount of tips that may be required to be given to a pool; "tip out" rate of 37.5% of tips received did not violate the FLSA where it was undisputed

that the employees earned more than the minimum wage); *Continental Cuisine,* 751 F.Supp. at 803 (no statutory or regulatory authority exists for limiting contributions to a tip pool; holding that a tip-out requirement that resulted in servers tipping out forty percent of their tips did not violate the FLSA because the servers earned more than the minimum wage).

credit, and therefore satisfied the employer's § 203(m) notice requirement as to those employees who actually received these materials. *Id.*

The *Kilgore* decision demonstrates that an employer may meet the notice requirement simply by providing conforming written materials to its employees. This holding is supported by *dicta* from other decisions indicating that an employer can satisfactorily convey notice of the tip credit by way of a poster, if the content of the poster is otherwise sufficient and it is prominently displayed. *See Marshall v. Gerwill, Inc.*, 495 F.Supp. 744, 753 (D.Md. 1980) ("There was no credible evidence proved or proffered as to what exactly had been told to the drivers concerning the tip credit provisions *or even if any information was contained in any poster or bulletin provided to the drivers.*") (emphasis added); *Bonham v. Copper Cellar Corp.*, 476 F.Supp. 98, 101 n. 8 (E.D.Tenn.1979) (noting that a poster containing information relevant to the FLSA notice provision was displayed in the workplace, but holding that the poster did not satisfy the notice requirement because it was not prominently displayed, employees were not directed to it, and its contents were not introduced at trial). *Cf. Tango's Restaurant*, 969 F.2d at 1322 (recognizing that notice of the tip credit should not be difficult for the employer to provide).

■ Therefore, if an employer can satisfactorily meet the notice requirement of § 203(m) by simply providing its employees with a file folder containing the relevant information or by prominently displaying a poster, then it follows that the notice can also be conveyed to employees through an individual co-worker regardless of whether that individual meets the technical definition of "employer" under the FLSA. Accordingly, whether Butler is an "employer" when it comes to sharing Mr. Davis' tips has little consequence to the notice inquiry. Thus, what remains at issue is whether Butler gave the notice as he claims, and whether that notice was adequate under § 203(m) of the FLSA. Having already disposed of the former question, we turn to the latter.

■ Ms. Davis separately contends that the Defendants' evidence of notice to her (i.e., Butler's affidavit) is insufficient to withstand summary judgment. Ms. Davis argues that the Defendants are required to counter her assertion that the Defendants never gave her notice with details about the alleged notice, such as when it occurred and what was relayed to her. This argument really raises the question of what type of information employers must pass along to their employees to satisfy the notice requirement of § 203(m), and according to Ms. Davis, Butler's affidavit does not meet this burden.

The courts that have spoken to this issue have generally held that "an employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation." *Kilgore*, 160 F.3d at 298 (citing *Martin*, 969 F.2d at 1322 (reading § 203(m) "to require at the very least notice to the employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.")); *see also United States Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780 (6th Cir.1995) (employers are required to make the employees aware of the existence of the tip credit or its amount) (citing 29 C.F.R. § 516.28(a)(3)); *Reich v. Chez Robert, Inc.*, 821 F.Supp. 967, 977 (D.N.J.1993), *vacated on other grounds*, 28 F.3d 401 (3d Cir. 1994) (employer could not take tip credit where it did not inform the employees that the minimum wage at the time was $3.35 an hour, or that the hourly cash wage actually paid was the result of a deduction allowed by law when tips supplement the reduced wage rate).

The only evidence of notice to Ms. Davis proffered by the Defendants is the following portion of Butler's affidavit:

During these discussions setting [Ms. Davis'] pay, a discussion was had with

Christine by your affiant regarding the provisions of the Fair Labor Standards Act and its provisions for hourly pay plus tips for tipped employees.

(Butler aff. ¶ 12.) Although Butler's affidavit testimony is somewhat cryptic, it adequately demonstrates that Butler had a conversation with Ms. Davis about the tip credit and "the provisions of the [FLSA]," and this raises at least a reasonable inference that Butler informed her that the Defendants intended to treat a portion of her tips as satisfying part of the Defendants' minimum wage obligation. Consequently, summary judgment cannot be granted on this basis either.

In sum, genuine issues of material fact remain as to whether the Defendants satisfied the notice requirement of § 203(m), and therefore, the Plaintiff's motion for summary judgment must be denied.

### VI. CONCLUSION

For all of the foregoing reasons, the Plaintiffs' motion for summary judgment is DENIED.

SO ORDERED.